IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONNIE TERRELL, # N-83826, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-710-JPG |
| | ) |
| DOCTOR SCOTT, | ) |
| VIPIN SHAH, | ) |
| JOHN DOE #1 (Nurse), | ) |
| JOHN DOE #2 (Nurse), | ) |
| and JOHN DOE #3 (Nurse), | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to several serious medical conditions. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Additionally, the Court must consider whether all of Plaintiff's claims may appropriately proceed together in the same lawsuit. This initial review reveals that 3 of Plaintiff's claims are not properly joined in this action. These improperly joined claims shall therefore be severed into separate cases, where they shall undergo the required § 1915A evaluation.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

1

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, one claim that shall remain in this action survives threshold review under § 1915A.

## The Complaint

Plaintiff states that he brings his Complaint against the Medical Staff at Pinckneyville and Wexford Health Source, for violations of his Eighth Amendment rights. (Doc. 1, p. 9).

However, he did not name Wexford Health Source among the Defendants.

Plaintiff alleges that at some unspecified time, he told Dr. Shah about his "constant headaches" and his belief that they are related to a lump on the top of his head. (Doc. 1-1, p. 9). Dr. Shah responded that the lump was an "old injury," and Plaintiff should wait until he leaves IDOC custody to address it "because of the germ[s] around here." *Id.* Dr. Shah's failure to use his knowledge, skill, and care to address Plaintiff's headaches was negligent, according to Plaintiff.

Plaintiff further states that since he arrived at Pinckneyville, false information in his medical records has contributed to the inadequate care. (Doc. 1-1, pp. 4-5). The Intake Nurse (John Doe #1)[1] did not give him an examination, and wrote in his records that he had no complaints or medication orders. Plaintiff claims that in fact, his medical records from Cook County and 2 other facilities documented that he was on (unspecified) medication, and that he had the lump on top of his cranium. This lump is growing and Plaintiff's headaches are getting worse. When he brought it to the attention of medical staff, it measured 10cm around, but he estimates it is now 25cm. (Doc. 1-1, p. 5). It hurts periodically and causes headaches.

Plaintiff alleges that if the Intake Nurse (Doe #1) had not altered his records regarding the lump on his head, he would have had a "fifty percent chance" of receiving adequate medical care. (Doc. 1-1, p. 6). Further, if he had received an examination at intake, Pinckneyville staff might have been better prepared for his need for medical assistance – he claims that this omission interfered with his medical permission slip for a lower deck and bottom bunk placement. He also claims to have had a second medical slip regarding a physical challenge that would allow him to participate in "ADA activity." *Id.*

Plaintiff's second experience with inadequate treatment was when he consulted Dr. Scott

---

[1] Plaintiff identifies each John Doe Nurse by number at Doc. 1-1, p. 1.

for pain in his right knee. Dr. Scott performed some simple exercises, prescribed medication for Plaintiff, and referred him to a therapist. (Doc. 1-1, p. 2). Plaintiff believed that Dr. Scott should have performed a blood test and ordered a knee x-ray before sending him to therapy. Three months later, Plaintiff was still having "extreme bad pain" in the knee, and asked for an x-ray. (Doc. 1-1, p. 3). The x-ray results showed "no damage" to Plaintiff's knee. Plaintiff, however, claims that this diagnosis is incorrect, because while he was housed at the Cook County Department of Corrections, an x-ray performed there showed results "totally the opposite" of Pinckneyville. *Id.* Plaintiff concludes that these allegedly different results (which he does not further describe) demonstrated inadequate treatment on the part of Pinckneyville medical providers.

On yet another occasion, Plaintiff contracted food poisoning, which also affected other inmates who ate the same meal. (Doc. 1-1, p. 4). Plaintiff was seen by John/Jane Doe Nurse #2 and told her about his symptoms of light-headedness, vomiting, and "constantly stool usage." *Id.* The Nurse was instructed to give out medication for this problem (which the Court assumes was diarrhea), but she told Plaintiff she had left it behind and would return with it later. She never came back to give Plaintiff the medication, which left him in "a lot of discomfort." *Id.*

Plaintiff describes a third medical issue, of "stomach discomfort." (Doc. 1-1, p. 7). The John Doe Nurse #3 refused to accept the stomach problem as a "medical emergency" that would be immediately referred to a doctor. Because this nurse considered Plaintiff's issue a non-emergency, this meant that Plaintiff would only be referred to the doctor after he first made 3 visits to Health Care for the problem, paying a $5.00 co-payment each time. The Nurse (Doe #3) prescribed "Fill Fiber Lax Captabs" for Plaintiff, but he claims he did not need them, because his symptoms were much worse than a stool softener could relieve. (Doc. 1-1, p. 7).

Plaintiff submitted another request slip for this problem, but when the same Nurse Doe #3 responded, he refused to see her. He then continued to endure the problem for another 2-1/2 months, after which it seemed to improve. Plaintiff asserts that he has a "common law right to refuse treatment [as] part of the doctrine of informed consent especially when a patient know[s] he's getting the wrong or useless medication for his symptom." (Doc. 1-1, p. 8). He asserts that this Nurse Doe #3 violated his Fifth and Eighth Amendment rights.

Ten months later, Plaintiff's same stomach problems recurred, and he submitted another request slip. This time, the nurse (apparently not Doe #3) referred Plaintiff straight to the doctor after he explained his symptoms. (Doc. 1-1, p. 7). Tests were run, and a doctor prescribed a 6-month course of Omeprazole for Plaintiff. (Doc. 1-1, p. 8).

Plaintiff seeks damages and unspecified injunctive relief for the alleged violations of his rights. (Doc. 1-1, pp. 6, 8).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Dr. Shah for failing to provide any treatment for Plaintiff's headaches and the lump on his head;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against the John Doe #1 Intake Nurse for failing to examine Plaintiff or document the lump on his head, and for interfering with his medical permits;

**Count 3:** Eighth Amendment deliberate indifference claim against Dr. Scott for failing to adequately treat Plaintiff's knee pain and for failing to diagnose the knee problem that had been found by a Cook County DOC doctor;

**Count 4:** Eighth Amendment deliberate indifference claim against the John/Jane Doe Nurse #2, for failing to deliver the promised medication to treat Plaintiff for food poisoning;

**Count 5:** Eighth Amendment deliberate indifference claim against the John Doe Nurse #3, for refusing to refer Plaintiff to the doctor immediately for his stomach problems, thus delaying treatment.

**Severance of Claims & Defendants**

As part of the screening process, the Court must assess whether the claims against the various parties may properly proceed together in the same action, in consideration of Federal Rule of Civil Procedure 20. Under Rule 20(a)(2),[2] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)). Severance of unrelated claims is encouraged, and the Seventh Circuit has recently warned district courts not to allow inmates "to flout the rules for joining claims and

---

[2] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017). *See also UWM Student Ass'n v. Lovell*, 888 F.3d 854 at *7 (7th Cir. 2018) (Rules 18 and 20 "operate independently," and the Rule 20 inquiry comes first). Rule 18 allows a plaintiff to join in one action as many claims as it has against an opposing party.

defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims shall be severed into new cases, given new case numbers, and assessed separate filing fees.

In Plaintiff's case, although he raises general complaints about the overall inadequacies of the health care program at Pinckneyville, a determination of whether his constitutional rights were violated turns on the analysis of each distinct incident and how it was handled by the particular Defendant(s) involved. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). In order to state a claim against a Defendant, a plaintiff must describe what each named Defendant did (or failed to do), that violated the plaintiff's constitutional rights.

Plaintiff describes 4 different medical problems, each of which represents a separate transaction or occurrence. Different Defendants were involved in responding to each of Plaintiff's requests for treatment. Under Rule 20, each of these distinct claims belongs in a separate lawsuit.

Counts 1 and 2 both relate to Plaintiff's headaches and the lump on his cranium; these claims shall remain in this original action. Plaintiff's other claims, relating to his knee pain, food poisoning, and stomach problems, shall be severed into 3 separate cases, as follows:

7

**First severed case:** Count 3 against Dr. Scott (knee pain).

**Second severed case:** Count 4 against the John/Jane Doe Nurse #2 (food poisoning).

**Third severed case:** Count 5 against the John Doe Nurse #3 (stomach problems).

After the above 3 new cases are opened, given case numbers, and assigned to a Judge, the Court shall conduct the required merits review pursuant to 28 U.S.C. § 1915A on those severed claims. Plaintiff shall be assessed a new filing fee for each severed case.

The merits of Counts 1 and 2 shall be addressed below. Count 1 survives review under § 1915A, but Count 2 does not.

### Count 1 – Deliberate Indifference to Serious Medical Needs – Dr. Shah

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. An objectively serious condition includes an ailment that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care

possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

In Plaintiff's case, he suffered from persistent headaches, which could be related to a lump on his head that had recently grown from a circumference of 10cm to 25cm. These symptoms arguably satisfy the objective component of an Eighth Amendment claim. As to the subjective factor, the Complaint must indicate that Dr. Shah either acted or failed to act with deliberate indifference to a known risk of serious harm to Plaintiff from this condition.

Plaintiff allegedly told Dr. Shah about his "constant" headache pain and the lump on his head. Despite this information, Dr. Shah gave Plaintiff no treatment. Dr. Shah also opined that the lump represented an old injury. However, the fact that the lump was growing in size suggests that it could be a recent problem that may require tests or other attention. Given these symptoms, Dr. Shah's decision to offer Plaintiff no treatment whatsoever could support a deliberate indifference claim against him.

At this early stage of the case, Plaintiff may proceed with his deliberate indifference claim in **Count 1** against Dr. Shah.

**Dismissal of Count 2 – Deliberate Indifference to Serious Medical Needs – Intake Nurse**

Plaintiff's claims against the Intake Nurse (John Doe #1) include the failure to provide Plaintiff with an initial medical examination, and the failure to document the lump on Plaintiff's head and/or alteration of his medical records. He speculates that this "false" information in his medical records contributed to Dr. Shah's failure to treat the lump and headaches. However,

9

Plaintiff does not explain how Dr. Shah's response to his complaint about the headaches and lump was related in any way to the information (or omissions) in his medical records, or to the lack of a routine examination when Plaintiff first arrived at Pinckneyville. Therefore, at this time, this portion of the claim against Intake Nurse John Doe #1 shall be dismissed without prejudice.

Plaintiff also alleges that this nurse somehow interfered with his medical permits for a lower deck and bottom bunk placement, as well as a slip documenting his physical challenge and eligibility for ADA activities. (Doc. 1-1, p. 6). Nurse John Doe #1 also failed to document that Plaintiff was on some medication (Plaintiff never states what medication he was taking). However, Plaintiff does not explain what, if any, harm or serious risk to his health ensued as a result of the John Doe #1 Nurse's actions or omissions. This portion of the claim shall also be dismissed without prejudice.

To summarize, **Count 2** and the John Doe #1 Intake Nurse shall be dismissed for failure to state a deliberate indifference claim upon which relief may be granted.

### Pending Motions

The motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 4) shall be addressed in a separate order.

Plaintiff's motion for recruitment of counsel (Doc. 5) shall be referred to the United States Magistrate Judge for further consideration.

### Disposition

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendant **JOHN DOE NURSE #1** is **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's claims in **COUNTS 3, 4, and 5** are **SEVERED** into 3 new cases as follows:

**First Severed Case: Count 3** against Dr. Scott for failing to adequately treat Plaintiff's knee pain and for failing to diagnose the knee problem that had been found by a Cook County DOC doctor;

**Second Severed Case: Count 4** against the John/Jane Doe Nurse #2, for failing to deliver the promised medication to treat Plaintiff for food poisoning;

**Third Severed Case: Count 5** against the John Doe Nurse #3, for refusing to refer Plaintiff to the doctor immediately for his stomach problems, thus delaying treatment.

In each new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint (Docs. 1 and 1-1)
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 4)
(4) Plaintiff's motion for recruitment of counsel (Doc. 5)

Plaintiff **will be responsible for an additional $350.00 filing fee** in each new case. No service shall be ordered on the Defendants in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 1 against Defendant VIPIN SHAH* for deliberate indifference. This case shall now be captioned as: **RONNIE TERRELL, Plaintiff, vs. VIPIN SHAH, Defendant.** Any attempt by Plaintiff to reinstate the claim in Count 2 against the John Doe Nurse #1 should be brought in this original case.

**IT IS FURTHER ORDERED** that Defendants **SCOTT, JOHN/JANE DOE NURSE #2, and JOHN DOE NURSE #3** are **TERMINATED** from *this* action with prejudice.

As to **COUNT 1**, which remains in the instant case, the Clerk of Court shall prepare for Defendant **SHAH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a

Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 5).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 21, 2018**

s/J. Phil Gilbert
United States District Judge